ALPHONSO v. AMERICAN IRON & MACHINE WORKS CO. et al.

No. 345.

District Court, E. D. Louisiana.
New Orleans Division.

July 11, 1941.

Harry V. Booth, of Shreveport, La., and Caldwell, Baker & Jordan, of Dallas, Tex., for petitioner.

John E. Unsworth and Frank T. Doyle, both of New Orleans, La., and Kemper, Hicks & Cramer and W. L. Kemper, all of Houston, Tex., for American Iron & Machine Works Co. and another.

J. Fair Hardin, of Shreveport, La., for defendant Associated Indemnity Corporation and another.

Robertson, Leachman, Payne, Gardere & Lancaster and Neth L. Leachman, all of Dallas, Tex., and Porteous, Johnson & Humphrey and W. A. Porteous, Jr., all of New Orleans, La., for defendant Perry Thompson.

CAILLOUET, District Judge.

On October 21, 1939, Earl Peter Alphonso, a welder's helper, was returning with Emmett Craig (his co-worker, who described himself, by his testimony on the trial, as a combination welder and boiler maker), to the American Iron and Machine Works Company shop at Harvey, La., from the doing of a welding job, that afternoon, on a drilling rig of the Humble Oil and Refining Company, located at Port Sulphur, La.

Craig, as was the usual course of procedure, had been directed to said job by the shop foreman of the American Iron and Machine Works Company, upon call made for service of said company by the Humble Oil and Refining Company, under the terms of a written contract existing between the two companies with respect to the repair and maintenance of the oil company's equipment, dated July 20, 1938; he had then directed Alphonso to accompany him as helper.

A collision took place between another motor vehicle and the motor truck wherein the two workmen had traveled to Port Sulphur and were now so returning to Harvey. This truck bore, on both sides, a sign, a large circle with an "A" in the center thereof, which was generally known as the insignia of the American Iron and Machine Works Company; was registered and licensed as the truck of said company, and upon its steering wheel carried the registry receipt (as required by Louisiana law) in the name of said American Iron and Machine Works Company, and was covered by public liability and property damage insurance, under a policy reading in favor of "Perry Thompson and/or the American Iron and Machine Works Company," and which had been taken out by the former.

Alphonso, the welder's helper, was instantly killed in the collision, and his widow, Mrs. Sydney Chilton Alphonso, acting for herself, individually, and for her two minor children, Earl Peter Alphonso, Jr., aged 10 years, and June Rose Alphonso, aged 7 years, filed suit against the American Iron and Machine Works Company, as his alleged employer, and against Insurors Indemnity and Insurance Company, the carrier of the said company's compensation insurance, in the 25th Judicial District Court of the State of Louisiana, in and for the Parish of Plaquemine, within the boundaries of which the fatal accident occurred.

The allegations of the plaintiff's petition made out a prima facie case under the Workmen's Compensation Laws of the State of Louisiana, Act La. No. 20 of 1914, as amended, and the petitioner sought to recover the maximum of $20 per week for a period not exceeding 300 weeks, for herself and for the use and benefit of her said two minor children, as well as the further sum of $150 for herself, individually, to cover the burial expenses attendant upon the death of her husband.

The petitioner set up that she had entered into a contract of employment with her attorneys of record for 20% of the amount which might be recovered, but not to exceed $1,000, and prayed that the said contract be recognized and enforced by the Court.

The action was removed to this Federal Court by the American Iron and Machine Works Company, and its insurer, Insurors Indemnity and Insurance Company, both foreign corporations authorized to do business in this state.

The two defendants thereupon made the Associated Indemnity Corporation, also a foreign corporation and authorized to do business in the State of Louisiana and the carrier of the compensation insurance of one Perry Thompson, a third party defendant in due course. Their third party complaint denied the right of Mrs. Alphonso to recover against them, they alleging that Earl Peter Alphonso was not in the employ of the American Iron and Machine Works Company, and that, therefore, no obligation rested upon the said company nor upon its insurer, Insurors Indemnity and Insurance Company, to pay the compensation prayed for by the plaintiff; they specifically averred that the said mentioned Perry Thompson had entered into a contract with the American Iron and Machine Works Company to do and perform "certain welding work" as might become necessary in the operation of the business carried on by the American Iron and Machine Works Company, and that Earl Peter Alphonso, at the time of his injury and death, was working as a welder's helper for the said Perry Thompson, an independent contractor and not a servant of the American Iron and Machine Works Company, who, pursuant to his said mentioned contract with the American Iron and Machine Works Company, had done the Humble Oil and Refining Company welding job of October 21, 1939.

The prayer of said joint third party complaint so filed by the American Iron and Machine Works Company and Insurors Indemnity and Insurance Company, was that judgment be rendered in favor of Mrs. Sydney Chilton Alphonso and against Associated Indemnity Corporation, third party defendant, for compensation at the rate of $20 per week for a period of 300 weeks, beginning October 28th, 1939, until paid, plus burial expenses of $150, with legal interest on both of said amounts until paid, and that her suit for compensation against third party plaintiffs American Iron and Machine Works Company and Insurors Indemnity and Insurance Company, as original defendants, be dismissed; and, in the alternative, should their prayer for such judgment in plaintiff's favor against As-

sociated Indemnity Corporation be denied and judgment be actually recovered by her against them, the original defendants, then, and in that event, they, as third party plaintiffs, should be accorded judgment in like amount over and against Associated Indemnity Corporation "for compensation at the rate of $20.00 per week, for a period of 300 weeks, in addition to the sum of $150.00 burial expenses."

The joint answer filed by the American Iron and Machine Works Company and Insurors Indemnity and Insurance Company to the plaintiff's petition or complaint was in keeping with their contention that the deceased Earl Peter Alphonso had been in no way employed by the American Iron and Machine Works Company, but was truly the employee of Perry Thompson at the time of his injury and death; the third party complaint and the said joint answer being filed at one and the same time.

The third party defendant's answer denied that Earl Peter Alphonso was in the employ of Perry Thompson and asserted that, in truth and in fact, he was an employee solely of the American Iron and Machine Works Company; and it prayed that the main and alternative demands, respectively, of the third party plaintiffs be denied; and that, in the alternative, if judgment be rendered against the third party defendant, then, in that event, similar judgment be rendered in its favor and against the two third party plaintiffs, in solido.

This being the state of the pleadings, the plaintiff, Mrs. Sydney Chilton Alphonso, filed a supplemental and amended petition, reciting what had so far taken place, and alleging that she had, necessarily, nothing but hearsay information concerning the circumstances attending her husband's employment, and that the true facts were better within the knowledge of the American Iron and Machine Works Company and its insurer, Insurors Indemnity and Insurance Company, as were the facts and circumstances surrounding the relationship between Perry Thompson and said American Iron and Machine Works Company, of which she was wholly unaware.

Then pleading in the alternative, she averred that if, as a matter of fact, it was error for her to have alleged in her original petition that her deceased husband was in the employ of the American Iron and Machine Works Company, then, and in that event, she now averred, alternatively, that

he was actually employed by Perry Thompson, and that said Thompson and the Associated Indemnity Corporation (as the carrier of his compensation insurance), were liable in solido for the compensation and the funeral expense sued for.

She prayed to recover judgment as originally sought against the two defendant companies, in solido, and, in the alternative and in the event, but only in that event, that her deceased husband were found to have been an employee of Perry Thompson and not of the American Iron and Machine Works Company, then that such judgment in her favor be rendered against said Thompson and his insurer, Associated Indemnity Corporation, in solido, instead of against the two original defendants.

A joint answer to this supplemental and amended petition of Mrs. Alphonso was then filed on behalf of Perry Thompson and Associated Indemnity Corporation by the then attorney of record of said Associated Indemnity Corporation. The answer specifically denied that the plaintiff's deceased husband had been an employee of defendant Perry Thompson and averred that, in truth and in fact, he was employed by American Iron and Machine Works Company; and as specifically denied that any policy of insurance issued by Associated Indemnity Corporation covered the deceased employee, whilst averring that the company's reputed insured, Perry Thompson, was no bona fide employer of Earl Peter Alphonso but purely an interposed party between said Alphonso and American Iron and Machine Works Company, his true employer.

E. J. Ranson & Sons, Inc., moved for permission to intervene, setting forth that as a funeral director, it had attended to the burial of plaintiff's deceased husband and was due the sum of $270.90 for said services; and that, under the Louisiana Workmen's Compensation Law, it was entitled to recover from the employer of the deceased workman, whether American Iron and Machine Works Company or Perry Thompson, the sum of $150 for burial expenses; for which reason, it represented that it sought to intervene that it might eventually secure judgment in the said mentioned sum against said American Iron and Machine Works Company and Insurors Indemnity and Insurance Company, in solido, or, in the alternative, against Perry Thompson and Associated Indemnity Corporation, in solido, with reservation of its right to claim the remainder of said burial expenses from the plaintiff widow.

At the opening of the trial it was agreed between all parties that whatever may be the judgment awarding compensation, the same shall include the additional sum of $150 for the claimed burial expenses. (Tr. p. 70).

The trial had not progressed very far on the first day before the then counsel for third party defendant, Associated Indemnity Corporation (in whose behalf there had been filed by their deceased predecessor, an answer to the third party complaint of the American Iron and Machine Works Company and Insurors Indemnity and Insurance Company, and a joint answer, for itself and Perry Thompson, its reputed insured, to the amended and supplemental petition or complaint of Mrs. Sydney Chilton Alphonso, praying for recovery, in the alternative, against said Perry Thompson and his insurer, if he be found to have been the employer of the deceased Earl Peter Alphonso) found themselves at a great disadvantage in presenting their defense, in view of the contention of the Associated Indemnity Corporation that Perry Thompson, its own co-defendant, was no independent contractor and employer of Earl Peter Alphonso, with respect to whose death the company was defending itself against a claim for compensation being pressed against the reputed employer of the deceased workmen and said employer's insurer; in which contention, said Thompson had been joined.

Counsel therefore sought and obtained leave to file separate answers by way of substitution for the joint answer so previously filed on behalf of Perry Thompson and his reputed insurer (which disclaimed that status), the said Associated Indemnity Corporation. (Tr. pp. 66 to 78). The separate answers, however, repeated the allegations and contention of the joint answer. Perry Thompson's testimony was not in accord with the pleadings so filed in his name and behalf.

The first issue to be determined in the case is who should pay the compensation sued for and which is, admittedly, due the plaintiff widow and her two minor children?

If Perry Thompson in his business relations with American Iron and Machine Works Company was an independent contractor and the employer of Earl Peter Alphonso at the time of the fatal accident,

938

whilst recovery of the claimed compensation may still be had directly from the original defendants, American Iron and Machine Works Company, the contractee, and its insurer, in solido, such defendants are, nevertheless, entitled to recover similarly against Perry Thompson, the contractor, and his own insurer, in solido, by way of indemnity: if Earl Peter Alphonso was in the service of the American Iron and Machine Works Company, and not in the service of Perry Thompson, the independent contractor, in the doing of the Humble Oil and Refining Company pure welding job on October 21, 1939, from which Alphonso was returning when death overtook him, then said American Iron and Machine Works Company and its insurer, alone, must discharge the legal obligation resting upon the decedent's employer, under the terms of the Louisiana Workmen's Compensation Law.

On September 17, 1934, at Houston, Texas, Perry Thompson and the American Iron and Machine Works Company entered into a written contract pertaining to the former's employment by the latter, under the following terms (which remained unchanged at the time of Alphonso's death on October 21st, 1939, except as hereinafter indicated), viz:

"Party of the first part agrees to furnish all equipment, labor and material for repairing boilers and do all boiler work for party of the second part, allowing said party of the second part a commission of 25% on all boiler work done by party of the first part.

"Party of the first part agrees to work for party of the second part exclusively while this contract is in force and to lend his influence and assistance in securing boiler work for party of the second part.

"Party of the second part agrees to carry all accounts and, when same are paid, to remit 75% of collections for boiler work to party of the first part, and no remittance is to be made until collected for.

"This contract can be cancelled by either party upon giving thirty (30) days' notice in writing to party of the other part."

Thompson testified that certain changes in the contract terms were effected at some later unnamed date in a conference had by him at Houston with the then two remaining owners and officers of the American Iron and Machine Works Company. The following excerpt from his testimony on cross-examination fairly explains the situation as to the claimed changes effected, viz:

"Q. In other words, if I understand you correctly, the change that was made between you and Mr. Cailloux and Mr. Miller was in Houston, Texas, and it changed this percentage from twenty five percent to twenty, making it 80—20? Is that right? A. Well, we had some other little changes in there.

*      *      *      *      *

"A. Well, I showed them that it was costing me more to operate when my business growed up to a larger business and that I would deserve a little more out of it, and we agreed upon my buying all these materials, paying for the labor and insurance—I paid—if I did a job for anyone, and, if the job didn't stand up, and I had trouble with that job, I was responsible for that job and I had to do the job over at my own expense or at my cost.

*      *      *      *      *

"Q. Well now, is that the extent of the change you have discussed now? A. Well, I think that that covered it, as I remember it—covered about everything. * * *

"Q. You didn't have any more changes, then, after this one time that you have testified about? A. Not that I remember, no." (Tr. pp. 150, 152, 153, 154).

So that, by Thompson's testimony, at no time was the contract of employment existing between him and American Iron and Machine Works Company any different than that reflected by the written document, except that the commission retained by American Iron and Machine Works Company on all boiler work done by Perry Thompson was reduced from 25% to 20%, and the original 75% that he was remitted was correspondingly increased to 80%.

George S. Hinkle, who was connected with the American Iron and Machine Works Company from 1929 until April 1, 1940, when he was then (and during the 8 months' employment of Alphonso at Harvey) its manager in the Gulf Coast area, with the company plants at Houston and Corpus Christi, Texas, and at New Iberia and Harvey, Louisiana, under his supervision and direction, also testified with reference to these contract changes. It was through him, he said, that Perry Thompson, in 1934, entered into the written contract in question. At that time, Hinkle was a salesman for the American Iron and Machine Works Company and met Perry Thompson (who was "looking for a con-

nection with the boiler business") through a mutual friend, who had recommended the American Iron and Machine Works Company and another company to Thompson. A trip to Houston, at Hinkle's suggestion, resulted in his entering into the aforementioned written contract.

Hinkle testified that he was familiar with the operations of Thompson under the arrangement with American Iron and Machine Works Company evidenced by the written contract of September 17, 1934, and that the Thompson activities at Harvey were controlled thereby, except that, at Thompson's request made of him, Hinkle, and upon the latter's recommendation to the owners and officers of the company, two changes were made which he detailed as follows, viz:

"Q. After the conversations you speak of that were had, what were the terms of the new contract, and what working arrangement did they have? A. Well, there was only two changes made. One of the changes was from twenty-five per cent to twenty per cent, and another change was, on the original agreement, Mr. Thompson, when he done work, went out and done boiler jobs, and things like that, the company usually did not pay him until they collected. Well, you know, in the oil business, there is ninety and one hundred and twenty days and six months in which they collect, and I recommended to them that we would pay him every month, you know, for the work he done, and that is another of the changes, and these were the only two changes that we really made from the old agreement." (Tr. pp. 335, 336).

Counsel for American Iron and Machine Works Company and Insurors Indemnity and Insurance Company contend that Perry Thompson was an independent contractor and not the servant of the first mentioned company. The written contract forming the basis of their business relations and the testimony adduced does not justify the holding that, by the preponderance of evidence, his status as independent contractor has been proved.

■ There can be no doubt, of course, that the burden rested upon the American Iron and Machine Works Company and Insurors Indemnity and Insurance Company to so prove. Crysel v. Gifford-Hill & Co., Inc., La.App., 2 Cir., 1935, 158 So. 264; Rodgers v. City of Hammond, La.App., 1 Cir., 1938, 178 So. 732; 22 C.J. § 21, p. 78; 27 Am.Jur. § 59, p. 538.

The very wording of the written contract indicates that neither party had in mind the establishment of Perry Thompson in the position of independent contractor; he was to work exclusively for American Iron and Machine Works Company in the doing of boiler repair work and bound himself in a fiduciary capacity to the company by agreeing to lend his influence and assistance in securing boiler work for his employer.

■ It is true that he was to furnish all equipment, labor and material for repairing boilers, but that, of itself, did not constitute him an independent contractor. Bristol & Gale Co. v. Industrial Commission, 1920, 292 Ill. 16, 126 N.E. 599; Nestle's Food Co. et al. v. Industrial Commission et al., 1931, 205 Wis. 467, 237 N.W. 117; Morgan v. Nelms, La.App., 2 Cir., 1927, 5 La.App. 414; 27 Am.Jur. § 12, p. 494.

Thompson was to work exclusively for the American Iron and Machine Works Company in the doing of boiler repair work, which was a service that one would reasonably expect to be furnished the public by such a business venture as the one conducted by the American Iron and Machine Works Company, and was to lend his best efforts towards increasing that feature of the company's business operations, to the mutual benefit and advantage of both parties contractant.

■ The term "independent contractor" is a very elastic one and whether one employed to render service does so as servant or as independent contractor, must be determined from the facts found to be present in the case. Madison v. Phillips Petroleum Co., 5 Cir., 1937, 88 F.2d 515.

"The most important test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Whether one is an independent contractor depends upon the extent to which he is, in fact, independent in performing the work. Broadly stated, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. * * *" 27 Am.Jur. § 6, p. 486.

■ If the employer has right to control the manner of executing the work to be done, the person rendering the service is not an independent contractor. 21 Words

and Phrases, Perm.Ed., pp. 26–48; **33** Fourth Decennial Digest, p. 250, ☞306.

It is the right to control and not the exercise of that right which determines whether the person performing the service is an employee or an independent contractor. Franklin Coal & Coke Co. v. Industrial Commission, 1921, 296 Ill. 329, 129 N.E. 811; Jones v. Louisiana Oil Refining Corporation, La.App., 2 Cir., 1925, 3 La. App. 85; Felts v. Singletary, La.App., 1 Cir., 1932, 143 So. 68; Tuscaloosa Veneer Co. v. Martin, 1937, 233 Ala. 567, 172 So. 608; Washington v. Sewerage & Water Board of New Orleans, La.App., Orleans, 1938, 180 So. 199; 27 Am.Jur. § 6, p. 487; 33 Fourth Decennial Digest, ☞307, p. 252.

The nature of one's duties or the character of work to be done may be such that very little supervision is required, so that the degree of actual supervision is not a sure test whether one is a servant or an independent contractor. And even though, as a matter of fact, the details of the work are left entirely to the contractor, yet, if the employer has the absolute power to control the work, such contractor is not independent. Fischer v. Industrial Commission, 1922, 301 Ill. 621, 134 N.E. 114; 27 Am.Jr. § 6, p. 488.

If one performs, in the usual manner as is done by a person so employed, a continuing task, the performance of which is necessary to the successful operation of the employer's business and is usually attended to by an employee, the existing relationship is one of master and servant, even though the employee, by the contract terms with the master, remains free to choose the means of effecting the work in contemplation and may select employees of his own choice as his helpers. Nestle's Food Co. et al. v. Industrial Commission, et al. supra.

In this present case, Perry Thompson was in the service of the American Iron and Machine Works Company; he was employed for an indefinite period and was required to devote his whole time to the doing, for the company, of the boiler work that, in due course of its business operations, it held itself out as ready and able to do and did contract with others to do for them; he was not at liberty to do boiler work for anyone else; he was not a free agent as to his hours of labor and, night or day, he, personally or through his crew, had to respond to the calls and needs of the service offered to its customers by the American Iron and Machine Works Company; his employment was continuous. Either he or the American Iron and Machine Works Company could cancel the contract that had established their business relationship in the first instance without incurring liability, provided, only, that thirty (30) days' written notice of intention so to do were first given; but he, Perry Thompson, otherwise remained in the service of the Company.

As a matter of fact, Thompson testified that, despite this provision for the thirty days' prior notice, either party was at liberty to break off business relations with the other instanter, without liability. (Tr. p. 157). At any rate, if in any case having so notified his intention to cancel, he found himself with an uncompleted boiler job in the field at the expiration of the thirtieth day, he was free "to move off location" and to pursue his own bent; no liability attached to him for so leaving an uncompleted repair job, for he was then no longer in the service of the company; he had engaged his services to the company for no more than the doing, exclusively for it, of boiler repair work so long as the contract subsisted; he had not bound himself to do any specific repair job from its inception to completion.

The particular job was not his to do; his obligation was merely to render service in the doing of the job, which was that of the American Iron and Machine Works Company.

To be an independent contractor, however, the employee must have assigned to him, under the employment, some particular task which he has the right to complete, and is under obligation to complete, and he must be subject to no control as to the details in the doing of the task. Case of James Murray, Appt., 130 Me. 181, 154 A. 352, 75 A.L.R. 720.

Thompson testified that he never knew in advance the locality or the kind or extent of the work that he would be called upon to do under his contract of employment.

Additionally, after first testifying that it was he who had employed the deceased Earl Peter Alphonso approximately 8 months immediately preceding his untimely death, and that when "we had a job down here * * * why Earl went to work for me", he was asked: "Where did you get the money to pay his wages?" (Tr. p. 141) and answered:

"I operated a business that was operated by the American Iron and Machine Works Company, and I worked for that—me, myself and my employees; the job I contracted made the money that paid all these bills". (Tr. p. 142).

As a matter of fact, Fred Ryals, the assistant manager of the American Iron and Machine Works Company, who was stationed at its Houston plant, and who acted as bookkeeper and business manager of Perry Thompson with reference to said Thompson's operations under his contract of employment with American Iron and Machine Works Company, on the time of the said Company and with all of its office facilities and conveniences at his command free of charge to either him or Thompson, testified that the Company furnished the necessary money for the Thompson payroll, which was paid twice a month by checks bearing the printed name "Perry Thompson" at the signature point, and the underprinted word "by", to the right of which word the witness Ryals signed his own name, as both he and Thompson testified he was fully authorized to do. The money to pay these checks was supplied, in each instance, by the deposit to the credit of Perry Thompson of an American Iron and Machine Works Company check for the required amount, drawn to his order and signed for the Company by the witness Ryals; which check the witness then personally endorsed for Thompson and deposited to his credit, and he then drew and signed the aforementioned Perry Thompson payroll checks, required by the Thompson operations under his contract of employment with American Iron and Machine Works Company.

Mrs. Alphonso testified that her husband was twice paid his wages by American Iron and Machine Works Company checks but the remainder of the time, by Perry Thompson payroll checks such as have just been described. These checks were sent from Houston to the Harvey plant of the American Iron and Machine Works Company, to the service of the operations of which her husband was attached, and were distributed by that plant's foreman, from whom came all orders to Alphonso to go upon jobs; and it was from the company that the deceased was furnished such expense money as it was necessary for him to have on going out into the field.

The contention of American Iron and Machine Works Company and its insurer is that since there was not sufficient boiler work coming in to keep the Perry Thompson employees continuously busy, by mutual understanding and as an accommodation as well as to insure the presence and availability of boiler workers when needed, employees such as Earl Peter Alphonso, when not on boiler jobs, were freely employed directly by American Iron and Machine Works Company in and about its Harvey plant and actually enjoyed a preferential status.

Thompson testified, however, that there were times when there was so much boiler work to be done that it was necessary for him to come down from Houston to Harvey and go to work, and his testimony indicates that this occurred during Craig's stay at Harvey which lasted but eleven days before he and Alphonso met with the accident of October 21st, 1939; but Craig, who estimated that nine boiler jobs were done within that period, testified that, so far as he knew, Thompson did no such work although he was actually in the Harvey district for about three of these eleven days.

But be that as it may, the evidence is clear that a call came to American Iron and Machine Works Company from the field representative of the Humble Oil and Refining Company, to which said American Iron and Machine Works Company was under contract to repair and maintain its equipment, as aforestated; that call was for service under said contract at an electric Deisel rig location about 35 miles, more or less, below New Orleans, and such service entailed the doing of a pure welding job upon drilling equipment which comprised no boiler at all; the shop foreman of the American Iron and Machine Works Company directed Craig to the job and Craig had Alphonso to accompany him, as his usual and sole helper; of all of this, the Harvey plant manager was cognizant and apparently approved.

So far as the record shows, Craig and Alphonso then had no boiler work to do and their having so entered into the service of the American Iron and Machine Works Company to do the pure welding job (in no wise related to boiler work) that the company was under contract to do for the oil company, appears to have been in keeping with the usual and approved method of operation.

Upon their return from this job, Alphonso was driving the boiler truck bearing the insignia of the American Iron and

Machine Works Company but which, it may be conceded, was an item of the equipment that the contract of September 17, 1939, obligated Perry Thompson to furnish for the doing of the boiler work that the company employed him to do.

It is in evidence that two boiler trucks, which are represented to have been Perry Thompson equipment, were subject to use as needed by American Iron and Machine Works Company if the same were then not employed in boiler work by Perry Thompson's employees, and that such employees, as has already been stated, passed from his employment to that of the company at will, if there was no boiler work to be done.

Under the circumstances, the Court's findings of fact and conclusions of law are:.

## Findings of Fact.

1. At the moment of his accidental death on October 21st, 1939, Earl Peter Alphonso was performing services arising out of and incidental to his employment in the course of his employer's business, and that employer was none other than the American Iron and Machine Works Company.

2. His employment related to the pure welding job, unconnected with boiler work, that the said American Iron and Machine Works Company was under contract to do for the Humble Oil and Refining Company.

3. The contract of employment with her attorneys, Harry V. Booth, of Shreveport, Louisiana, and Caldwell, Baker & Jordan, of Dallas, Texas, entered into by the plaintiff, Mrs. Sydney Chilton Alphonso, and calling for a maximum fee of $1,000, contingent upon recovery, is fair and just; and is therefore approved.

## Conclusions of Law.

1. The said American Iron and Machine Works Company, as employer of the deceased Earl Peter Alphonso, and its compensation insurer Insurors Indemnity and Insurance Company, in solido, owe and should pay to the decedent's widow, Mrs. Sydney Chilton Alphonso, for the common benefit of herself and their two minor children, Earl Peter Alphonso, Jr. and June Rose Alphonso, the full sum of twenty ($20) dollars per week, for a period of 300 weeks, beginning October 28, 1939, and weekly thereafter, together with legal interest on each past due installment from its maturity date until paid, as well as all costs of these proceedings; and said named employer and insurer, in solido, owe and should pay to E. J. Ranson & Sons, Incorporated, of New Orleans, La., as burial expenses attendant upon the death of the deceased employee, the full sum of one hundred and fifty ($150) dollars, with legal interest thereon from judicial demand, i.e. November 12, 1940, until paid.

2. The contract of attorneys' employment being approved by the Court, the fee of the named attorneys in interest should be fixed at the rate of twenty per cent (20%) of the total amount as shall be collected under the judgment to be entered, subject to the proviso, however, that the aggregate amount of said fee shall not exceed one thousand ($1,000) dollars.

3. The third party defendant Associated Indemnity Corporation (subsequently made defendant with Perry Thompson, in the alternative, by the plaintiff, Mrs. Sydney Chilton Alphonso) and said Perry Thompson, should be dismissed from these proceedings, with the original defendants American Iron and Machine Works Company and Insurors Indemnity and Insurance Company condemned to pay, in solido, all costs attendant upon their resort to the third party procedure, as well as all other costs.

Let judgment be entered accordingly.