**WHALEN v. HARRISON, Collector of Internal Revenue.**

No. 3998.

District Court, N. D. Illinois, E. D.

July 30, 1943.

516

John E. Hughes, of Chicago, Ill., for plaintiff.

J. Albert Woll, U. S. Dist. Atty., of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

This suit was brought for the recovery of $26.35 alleged to have been illegally and erroneously collected from plaintiff, an owner and trainer of race horses, as social security taxes, including a penalty, upon compensation paid by him to certain free lance jockeys who rode his horses in competition in various races at the Chicago race courses during the year 1939. These jockeys were not regularly employed by him, but he engaged one of them for each particular race. The Collector determined that the jockeys thus casually employed by plaintiff were his employees within the meaning of the Social Security Act, c. 531, 49 Stat. 620, 42 U.S.C.A. § 1107, and accordingly assessed the tax here in question.

On August 31, 1939, plaintiff paid the tax so assessed, and on November 27, 1940, filed a claim for its refund, which claim was rejected by the Commissioner, and on March 4, 1942, this suit for the recovery of same was instituted. May 12, 1942, defendant filed its answer denying various of the allegations of the complaint, and on May 26, 1943, the court heard the case without a jury, and took the same under advisement. Subsequently briefs were submitted by both sides. The question now before me for decision is whether the free lance jockeys thus casually employed by plaintiff were "employees" within the meaning of the Social Security Act, or whether they were "independent contractors" as that term is defined by Article 205 of Treasury Regulation 90, promulgated under Title IX of the Social Security Act. Plaintiff urges all of the aspects of the case which are indicative of the independent contractor relationship, while defendant, on the other hand, urges the aspects which show the employment status, all of the criteria being the standard tests used in determining workmen's compensation cases, principal and agent, etc.

Sec. 907 as used in this title provides that " (c) The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except—"

Treasury Regulation 90, Article 205, provides:

"Employed Individuals.—An individual is in the employ of another within the meaning of the Act if he performs services in an employment as defined in section 907(c). However, the relationship between the individual who performs such services and the person for whom such services are rendered must, as to those services, be the legal relationship of employer and employee. The Act makes no distinction between classes or grades of employees. Thus, superintendents, managers, and other superior employees are employees within the meaning of the Act.

"The words 'employ,' 'employer,' and 'employee,' as used in this article, are to be taken in their ordinary meaning. An employer, however, may be an individual, a corporation, a partnership, a trust or estate, a joint-stock company, an association, or a syndicate, group, pool, joint venture, or other unincorporated organization, group or entity. An employer may be a person acting in a fiduciary capacity or on behalf of another, such as a guardian, committee, trustee, executor or administrator, trustee in bankruptcy, receiver, assignee for the benefit of creditors, or conservator.

"Whether the relationship of employer and employee exists, will in doubtful cases be determined upon an examination of the particular facts of each case.

"Generally the relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done. In this connection it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor, and not an employee.

"If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if two individuals in fact stand in the relation of employer and employee to each other, it is of no consequence that the employee is designated as a partner, coadventurer, agent, or independent contractor.

"The measurement, method or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists.

"Individuals performing services as independent contractors are not employees. Generally, physicians, lawyers, dentists, veterinarians, contractors, sub-contractors, public stenographers, auctioneers, and others who follow an independent trade, business or profession, in which they offer their services to the public, are independent contractors and not employees."

■ Under the Rules, Regulations and Conditions of Horse Racing, in Illinois, in force in 1939, jockeys fall into three classifications: (1) Regular jockeys; (2) apprentice jockeys, who are graduated from the apprentice class and are under contract to some owner; and (3) free lance jockeys, who are graduated from the apprentice class, but are not under contract to any owner, and who attend races in the hope of securing mounts. Before one may file an application for a license as an apprentice jockey he is required in Illinois to have served at least one year as an exercise boy at the tracks, and at the time of filing his application is required to be under contract for at least three years to some owner. After he has ridden forty mounts, or at the end of one year, whichever happens first, he ceases to be an apprentice and becomes a regular jockey. None of the jockeys here in question were under contract to plaintiff. When plaintiff entered a horse in a particular race, on the day previous to that particular race he went to the Racing Secretary's Office on the track, and through a jockey agent, who solicits mounts for the various jockeys, arranged for one to ride his horse, the owner for the first time seeing the jockey who was to ride his horse in the particular race when the jockey came to the paddock on the day of the race. The undisputed evidence in the instant case shows that plaintiff had no control over any of these casual jockeys and had no right to discharge one

once he was upon the horse. In Radio City Music Hall Corporation v. United States, 2 Cir., 135 F.2d 715, 716, 717, a case involving the question of whether certain actors were employees, within the meaning of the Social Security Act, or whether they were independent contractors, as that term is defined in Article 205 of Regulation 90, Judge Hand said: "The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said, though the regulation redundantly elaborated it. In the case at bar the plaintiff did intervene to some degree; but so does a general building contractor intervene in the work of his subcontractors. He decides how the different parts of the work must be timed, and how they shall be fitted together; if he finds it desirable to cut out this or that from the specifications, he does so. Some such supervision is inherent in any joint undertaking, and does not make the contributing contractors employees. By far the greater part of (producer's) intervention in the 'acts' was no more than this. It is true, as we have shown, that to a very limited extent he went further, but these interventions were trivial in amount and in character; certainly not enough to color the whole relation."

The Illinois Racing Commission, pursuant to the authority conferred on it by the Illinois statute, had in force, in 1939, the following Rule: "197. Every horse in every race must be ridden so as to finish as near as possible to first, and show the best and fastest race it is capable of at that time, and shall not be eased up or coasted, even if it has no chance to win first, second, third, or fourth prize, so that the record of that race may, as truly as possible, show its real ability."

The only directions or suggestions or advice which the owner could give to the jockey was in effect the same directions and suggestions and advice contained in Rule 197. At the trial all of the jockeys testified that they would disregard any instructions given to them by an owner or trainer which were contrary to the provisions of Rule 197. Defendant insists that while plaintiff does not have the right, under the Racing Rules, to discharge a jockey once he has been put up on the horse, nevertheless an unsatisfactory performance or disregard of instructions would result in no further employment,

which in effect amounts to a discharge. While this is probably true in the case of the jockeys, it is also true in the case of employment of an attorney, or physician, or even a public stenographer, all of whom admittedly are independent · contractors.

In Ridge Country Club v. United States, 135 F.2d 718, 720, a case involving the question of whether a professional golf instructor hired by a country club to give instruction to its members was an employee or an independent contractor, the Circuit Court of Appeals for the Seventh Circuit said:

"The test of the Regulation which we feel clinches the independent contractor status as to the extra work here in issue is that the control of the club was simply as to the result to be accomplished and not the means of accomplishment. The club wanted to make professional instructional services available to its members and it wanted a store ready to meet its members' golfing needs. It certainly was not dictating to the pro how to teach the members. The Regulations specifically point out the generally excludable occupations of the standard professions. A golf pro may be so classified in some instances. * * * * * * * * * *

"We, too, look to the purpose of the statute and the intent of the legislature in enacting it, as well as the words used to carry out this intention. Only certain classes are the beneficiaries of this social legislation, consisting chiefly of the ordinary wage earners. The statute does not comprehend storekeepers, professional men engaged in making their own livelihoods, profiting or losing from the exercise of their own judgment, capital, and enterprise. They generally profit to a greater extent than the employed person who does not reap the entire benefit of his services, and therefore, presumably, is not able to provide for the emergencies of destitute old age, or economic depression and unemployment, and so is, more generally, in need of Government insurance against such misfortunes.

"The contract which defined the rights and duties of the pro, gave him wide discretion in the conduct of his activities. His profits depended chiefly on his abilities and the time and enthusiasm he put into his work. He alone, could direct the manner in which he would execute his duties."

In the case at bar the owner or trainer could not intervene to control the details of the jockey's performance. The jockey alone could direct the manner in which he would execute his duties. The evidence shows that the owner had no right to order the jockey to do anything save only to obey the rules of the Racing Commission as the same were set out by the Commission. Neither had the owner any right to discharge the jockey once he was up on the horse. Since the right to control involves the right to discharge, the relation of master and servant does not exist unless the power to discharge also exists.

After a careful consideration of all of the evidence and a reading of the briefs, I am of the opinion that the free lance jockeys here involved are independent contractors, exercising an independent trade or profession in which they offer their services to all of the horse racing public.

The court therefore finds that plaintiff is entitled to judgment against defendant for the sum of $26.35, together with interest and costs.