**GRACE v. MAGRUDER, Collector of Internal Revenue.**

No. 8756.

United States Court of Appeals District of Columbia.

Decided March 19, 1945.

Mr. Lowry N. Coe, of Washington, D. C., for appellant.

Mr. Fred J. Neuland, Special Assistant to the Attorney General, with whom Messrs. Samuel O. Clark, Jr., Assistant Attorney General, Sewall Key and A. F. Prescott, Special Assistants to the Attorney General, Edward M. Curran, United States Attorney, and Daniel B. Maher, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Appellant sued to recover from the Collector of Internal Revenue sums assessed and collected as Social Security[1] and Federal Unemployment taxes.[2] The case went to trial in the District Court upon a stipu-

---

[1] Federal Insurance Contributions Act (originally Title VIII of the Social Security Act) 26 U.S.C.A. Int.Rev.Code, § 1400 et seq.

[2] Federal Unemployment Tax Act (originally Title IX of the Social Security Act) 26 U.S.C.A. Int.Rev.Code, § 1600 et seq.

lation of facts; the findings of the trial judge were based upon the stipulation; and judgment was entered dismissing the complaint.

The principal issue of the case is whether or not "coal hustlers" are employees of the appellant within the meaning of the Social Security Act.[3] Appellant contends that they are not employees; consequently, that he is not liable for the taxes assessed and collected. He sued to recover, also, taxes collected on account of persons designated "watchman at railroad yard" and "extra labor," but these contentions were not seriously urged. In any event, our decision disposes of all three in the same manner.

Appellant characterizes the coal hustlers as *itinerant* laborers and the trial court so found. But the word "itinerant," while descriptive, helps little in determining whether they are employees. If they constituted "casual labor not in the course of the employer's trade or business," they would come within an exemption of the Act, but it is quite clear that their labor was performed in the course of appellant's trade or business.[4]

The other alternative—upon which appellant relies—is that these persons are independent contractors. To support this interpretation, he cites the Gould case[5] for the proposition that taxing statutes should be strictly construed. But these statutes are primarily remedial and require construction which will give effect to the intention of Congress,[6] "in the light of the mischief to be corrected and the end to be attained;"[7] their taxing phase is sec-

ondary and incidental. The three groups of persons involved in this case—although not listed as employees by appellant—are obviously subject economically to the evils the laws were designed to combat,[8] and the remedies those laws afford are appropriate for preventing or curing the evils.[9] It was with such considerations in mind that Justice Rutledge, speaking for the Supreme Court, said, recently: "Whether, given the intended national uniformity, the term 'employee' includes such workers as these newsboys must be answered primarily from the history, terms and purposes of the legislation. The word 'is not treated by Congress as a word of art having a definite meaning * * *.' Rather 'it takes color from its surroundings * * * [in] the statute where it appears,' United States v. American Trucking Assns., 310 U.S. 534, 545, 60 S.Ct. 1059, 1065, 84 L.Ed. 1345, and derives meaning from the context of that statute, which 'must be read in the light of the mischief to be corrected and the end to be attained.' South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 259, 60 S.Ct. 544, 549, 84 L.Ed. 732; cf. New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012; Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm Products Co., 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63."[10] The District Court correctly held, therefore, that the common law cases which define employees and independent contractors are not controlling in the present case. As Judge Parker has said, recently, speaking for the Fourth Circuit Court of Appeals: "Common law rules as to distinctions between servants and in-

---

[3] 42 U.S.C.A. § 1011: "When used in sections 1001—1010 of this title * * * (b) The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except * * * (3) Casual labor not in the course of the employer's trade or business * * *."

[4] Southern Ry. Co. v. Black, 4 Cir., 127 F.2d 280, 281.

[5] Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211.

[6] Carroll v. Social Security Board, 7 Cir., 128 F.2d 876, 881; United States v. Vogue, Inc., 4 Cir., 145 F.2d 609; see Helvering v. Bliss, 293 U.S. 144, 150, 55 S.Ct. 17, 79 L.Ed. 246, 95 A.L.R. 207; see, generally, Binkley Mining Co. v. Wheeler, 8 Cir., 133 F.2d 863, 871; United States v. American Trucking Associations, Inc., 310 U.S. 534, 542, 60 S.Ct.

1059, 84 L.Ed. 1345; Sachs v. Ohio Nat. Life Ins. Co., 7 Cir., 131 F.2d 134, 137.

[7] See Warner v. Goltra, 293 U.S. 155, 158, 55 S.Ct. 46, 48, 79 L.Ed. 254; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 259, 60 S.Ct. 544, 84 L.Ed. 732.

[8] United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, 612.

[9] National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; Walling v. American Needlecrafts, Inc., 6 Cir., 139 F.2d 60, 63.

[10] National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170; see United States v. American Trucking Associations, Inc., 310 U.S. 534, 545-547 n. 29, 60 S.Ct. 1059, 84 L.Ed. 1345.

dependent contractors throw but little light on the question involved. The Social Security Act, like the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., was enacted pursuant to a public policy unknown to the common law; and its applicability is to be judged rather from the purposes that Congress had in mind than from common law rules worked out for determining tort liability. 'Red caps' have been held employees of railroads within the Fair Labor Standards Act. Williams v. Jacksonville Terminal Co., 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914; Southern Ry. Co. v. Black, 4 Cir., 127 F.2d 280. Needleworkers engaged in processing materials in their own homes on a piece work basis have been held within the act. Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60. And newsboys have been held employees within the meaning of the National Labor Relations Act. National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, [88 L.Ed. 1170]. If the status of employees is to be accorded to 'red caps' and newsboys within the meaning of these kindred statutes, certainly the status should not be denied the

women workers here who fall so clearly within the statutory purpose."[11]

The Yellow Cab Company case,[12] relied on by appellant, was expressly distinguished by the same court in its later opinion in the Vogue case.[13] The relationship existing between lessors and lessees of taxicabs is as clearly different from the relationship of appellant to these colored laborers as it is from that of the Vogue retail store to its piece work needle-workers, and from the other employer-employee relationships listed by Judge Parker.

But even apart from the standard of interpretation thus required, we conclude that these persons are not independent contractors. The term is usually applied to an entirely different type of persons,[14] working under entirely different conditions. The vital element which negatives such independence, in the relation between employer and employee, is the right to control the employee, not only as to the final result, but in the performance of the task itself.[15] And, it is the right to control, not control or supervision itself, which is most important.[16]

Ordinarily the nature of the em-

[11] United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, 612; see, also, Walling v. American Needlecrafts, Inc., 6 Cir., 139 F.2d 60, 63.

[12] Yellow Cab Co. of D. C., Inc., v. Magruder, D.C., 49 F.Supp. 605; Magruder v. Yellow Cab Co. of D. C., Inc., 4 Cir., 141 F.2d 324, 152 A.L.R. 516.

[13] United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, 613.

[14] See, for example, 26 Code of Fed. Reg. § 400.205: "Generally, physicians, lawyers, dentists, veterinarians, contractors, subcontractors, public stenographers, auctioneers, and others who follow an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees."; Whalen v. Harrison, D.C., 51 F.Supp. 515, 517. A contractor to be independent must ordinarily exercise an independent employment, business, calling, or occupation: North Bend Lumber Co. v. Chicago, M. & P. S. Ry. Co., 76 Wash. 232, 244, 135 P. 1017, 1022; Thompson v. Twiss, 90 Conn. 444, 447, 97 A. 328, 330, L.R.A.1916E, 506; Winters v. American Radiator Co., 128 Minn. 508, 509, 151 N.W. 277, 278, L.R.A.1915D, 476. Absence of these characteristics points strongly to the conclusion that a contract is one of hiring and service:

Southern Cotton Oil Co. v. Wallace, 23 Tex.Civ.App. 12, 16, 54 S.W. 638, 641; Mullich v. Brocker, 119 Mo.App. 332, 339, 97 S.W. 549, 551.

[15] Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 523, 10 S.Ct. 175, 33 L. Ed. 440; New Orleans, M. & C. R. Company v. Hanning, 82 U.S. 649, 656, 657, 15 Wall. 649, 656, 657, 21 L.Ed. 220; cf. Ridge Country Club v. United States, 7 Cir., 135 F.2d 718.

[16] Yellow Cab Co. of D. C., Inc. v. Magruder, D.C., 49 F.Supp. 605, 607: "Probably the most important of these tests is whether the alleged master in any case has the right, even if he does not exercise it, to control and direct the alleged servant, not only as to what shall be done but how it shall be done. Each case depends upon its own facts and circumstances, and in doubtful cases it is necessary to examine the particular facts to answer the question. In the brief of counsel for the defendant in this case it is frankly said 'it may be conceded at the outset that this (case) is in the class of doubtful cases which must be resolved by an examination of the particular facts of the case. * * * If the court concludes that the relationship between the parties was one of leasing the taxicabs, then the matter is at an end and there is no liability for the

682

ployment can be determined from the contract between the parties. In support of his position, appellant says—and the court found—[1] that he has no agreement with the hustlers reserving the right to supervise the work of storing or directing the manner in which they store the coal, and [2] that no supervision or control is exercised either by plaintiff or the customer over the storage of coal or over the man who does the work of storing, or over the time and manner in which the work is done. But he also says—and the court found—that he "had no agreement or contract *of any type* with any of the men." Even in the case of an independent contractor, there is an agreement or contract of some kind. Consequently, appellant's contention boils down to the proposition that these hustlers are mere volunteers or licensees. The rest of the findings show clearly enough that this is not the case; although there may be no written agreements, there are certainly contracts of employment, and these hustlers work under compelling supervision as a result of the practice used by appellant in paying them. This is revealed by his explanation of the reason for the practice: "Q. Can you state why you collect from the customer and pay the men yourself? A. Well, I think it is a little. protection to a certain. extent, because sometimes they have collected on both ends." This storage of coal is an essential, integral part of appellant's business; a customary service of retai coal dealers.[17] Nothing could be more destructive of the good will and other intangibles upon which the success of such a business depends than improper service at the point of contact between the company and the customer. If a particular hustler stored coal improperly, or committed depredations on the customer's property, or otherwise misbehaved himself to the detriment of appellant's business, there was a sufficient reservation of power to compel good behavior and insure that he do his

work properly, even in the absence of a written agreement. Nothing could be more effective to this end than the simple expedient of requiring that [1] he finish the job assigned, [2] get the signature of a satisfied customer, [3] return dutifully to appellant's office, [4] present the signed card and get his money. No one who ever earned his living in such a manner would have any doubt of its efficacy, or of the power of supervision and control implicit in the arrangement. The absence of a written agreement or contract of hiring only makes the employment more hazardous for the hustler and puts him more completely under appellant's control.

Affirmed.

tax'"; Alphonso v. American Iron & Machine Works Co., D.C., 39 F.Supp. 934, 940; Whalen v. Harrison, D.C., 51 F.Supp. 515, 517 (right to discharge); Moore v. Clarke, 171 Md. 39, 50, 187 A. 887, 892-893, 107 A.L.R. 924 (jockey); Bogatsky v. Heller, 152 Md. 18, 27, 135 A. 416, 420; North Bend Lumber Co. v. Chicago, M. & P. S. Ry., 76 Wash. 232, 244, 135 P. 1017, 1022: "If such right of control is retained, if the employer reserves to himself, or to his representative, the right to control at his pleasure the manner and means by which the work contracted for is to be accomplished, if the employer may stand by and tell the person undertaking the work where, when, and how it shall be performed, such person is the agent and servant of the employer, and not an independent contractor."

17 Cf. Southern Ry. Co. v. Black, 4 Cir., 127 F.2d 280, 281.