HENRY BRODERICK, INC. v. SQUIRE

No. 832.

District Court, W. D. Washington, S. D.

Dec. 11, 1946.

Eggerman, Rosling & Williams, of Seattle, Wash., for plaintiff.

J. Charles Dennis, U. S. Atty., Thomas R. Winter, Sp. Asst. to the Chief Counsel, Bureau of Internal Revenue, and Harry Sager, Asst. U. S. Atty., all of Tacoma, Wash., for defendant.

LEAVY, District Judge.

The plaintiff, Henry Broderick, Inc., seeks a judgment for refund of taxes and interest collected by the defendant, Clark Squire, Collector of Internal Revenue. The issue presented by this controversy is whether the persons upon whose earnings the tax was collected were in fact employees within the meaning of the Social Security Act, 42 U.S.C.A. § 301 et seq., or whether they were independent contractors.

The statutes and regulations involved are: Federal Insurance Contributions Act, as amended, 26 U.S.C.A. Int.Rev.Code, §§ 1400–1432; Federal Unemployment Tax Act, 26 U.S.C.A. Int.Rev.Code, §§ 1600–1611.

Neither of the two Federal statutes referred to define the term "employee".

The regulation involved is designated as Section 402.204 of Regulation 106. This regulation states: "Every individual is an employee if the relationship between him and the person for whom he performs services is the regular relationship of employer and employee."

It then provides: "In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means or methods of accomplishing the result, he is an independent contractor."

For the purpose of further clarifying the regulation, in April, 1943, the Acting Commissioner of Internal Revenue in Mimeograph 5504 Accumulative Bulletin, January-1943, page 1066, ruled that real estate salesmen are employees of brokers for Federal Employment Tax purposes even though their compensation is based upon commissions from sales.

The facts as disclosed by the record in this case, from documentary and oral evidence offered at the time of trial by the plaintiff—there being no evidence offered by ·the defendant—may be briefly summarized as follows:

A written agreement was entered into by the plaintiff with the persons whose remuneration became the subject of the tax herein. This agreement provided that one engaged in selling real estate in connection with the plaintiff's activities in that field must be the holder of a real estate broker's license of the State of Washington, in full force and effect. It also provided that it was the intent of the plaintiff and the persons who signed the agreement that the relationship between them was that of "an independent contractor, and not a servant, employee, joint adventurer or partner". The brokers agreed to sell real estate for clients of the plaintiff upon a commission basis. Such sales were made of properties listed with the plaintiff and all contractual relationships between the owner of the property and the seller of the property were with the plaintiff herein. The commission received from such activity became the property of the plaintiff. When a transaction was finally consummated and commissions were paid, the plaintiff would divide the proceeds of such commission equally between itself and the individual broker who made the sale. The plaintiff maintained an office properly equipped with furnishings and staff suitable to serving the public as a real estate broker. It was one of the leading and well known real estate brokerage concerns in the City of Seattle enjoying the goodwill of and a reputation for fair dealing with the public. Each broker was supplied with desk room in the plaintiff's office, as well as a telephone,

switchboard service and reasonable and necessary stenographic services, and the plaintiff in its sole discretion might mention in its advertising the name of the person engaged in selling. All current listings were available to such brokers; the plaintiff, however, reserving the right to place in the temporary possession of any one of them exclusive privileges of sale. Regular sales meetings were attended by both its salaried real estate salesmen and the brokers herein involved, though there was no compulsory requirement that a broker be in attendance. At these meetings discussions were had regarding matters of the business of selling, and assignments of listed property were made by the plaintiff. Any broker was free to make a choice of listings but this was subject to such limitations as the plaintiff might impose. Either the plaintiff or its brokers might terminate the relationship existing between them at will, and generally the brokers were given a free hand as to whether they would devote all or part of their time to the service of selling listed real estate for the plaintiff, although, on the other hand, if they should undertake to sell real estate for other brokers or make sales in their own name and on their own behalf they would be considered as violating the obligations they had assumed, and be discharged.

The foregoing summarizes the facts as established by the evidence in this case disclosing the nature of the services rendered to the plaintiff by the brokers and the form of remuneration paid such brokers by the plaintiff.

Plaintiff insists that there are three essential elements that must be found before the brokers could be classified as employees. These are as follows:

(1) Wages as remuneration for employment must have been paid to the brokers.

(2) These must have been paid by and from funds belonging to the plaintiff.

(3) The services must have been performed by the broker for the plaintiff as his employee.

It seems to me these facts I have found of the relationship existing between the parties, fairly meet each of the tests enumerated.

(1) The remuneration was paid in all instances by the plaintiff to its broker. It is true that it was not denominated wages, nor was it a fixed amount for a given period of time, but it was definite in amount whenever plaintiff realized a commission on the sale of real estate. It was not paid to the broker by the plaintiff until after the plaintiff had collected the commission from its client. It thus became the only remuneration that the broker received for his services and the receipt thereof was in all instances from the plaintiff and not from the client for whom the sale was made.

(2) It was paid by and from funds that belonged to the plaintiff, since all commissions from the sales made by the brokers became the property of the plaintiff. The fact that they were deposited in a separate fund instead of in the profit and loss account of the plaintiff, in no way altered the plaintiff's complete control over such funds. Any failure on the part of a client to account for commissions in a real estate sale gave rise to no claim or cause of action whatever on the part of the broker against such client. The plaintiff alone could institute and maintain such action, because the plaintiff alone was the responsible party at all stages throughout every real estate transaction and had the sole power to make such sale through its licensed broker officers, its licensed salesmen, or through the licensed brokers whose earnings are involved in this litigation.

(3) The services of the broker in negotiating the transactions in the name of and on behalf of the plaintiff herein were services of a representative and agent, and not as a principal, even though the broker himself may have considered himself an independent contractor.

The first and second elements essential to constitute the employer-employee relationship as stated by the plaintiff, clearly exist in this case, and, when we apply the established facts to the Federal Social Security Statute involved herein, and give application to the regulations and interpretations announced by the Commissioner of

Internal Revenue and the various Federal Court decisions, there is little room for doubt that the employer-employee relationship does exist in this case.

The opinion of the Acting Commissioner of Internal Revenue of April, 1943, was based upon a set of facts, (whether they be real or imaginary) that are almost identical with the methods, practices and procedure existing between the plaintiff and its brokers, with the exception that there the agents were referred to as salesmen and here they are designated as brokers. It was held in this ruling that those engaged in making sales under the practice described in the opinion must be classified as employees for the purposes of the taxes imposed by Titles VIII and IX of the Social Security Act, the Federal Insurance Contribution Act and the Federal Unemployment Tax Act.

I find therefore:

(1) That the brokers received remuneration for services rendered to the plaintiff.

(2) That such remuneration was paid them by and from funds belonging to the plaintiff.

(3) That the services they rendered for which they received compensation were performed for the plaintiff, thus creating the employer-employee relationship as created by the provisions of the Social Security Act.

The plaintiff relies heavily upon a determination of this identical issue made by the Supreme Court of the State of Washington in Henry Broderick, Inc., v. Riley, 22 Wash.2d 760, 157 P.2d 954, where that court, in considering the applicability of the State's Unemployment Compensation Law upon the identical facts herein involved, found that the brokers were independent contractors and that the relationship of employer-employee did not exist. This opinion is by a divided court, and while it is entitled to great weight and consideration, it cannot be controlling on this Court in construing the Federal statute, even though there be a similarity as to the facts.

Congress conferred upon the Treasury Department the responsibility of promulgating regulations to make effective the Social Security Laws and also gave them the right to construe such laws in the first instance. The construction given by the Commissioner of Internal Revenue to a hypothetical set of facts which are almost identical to the actual facts involved in this case, determined that the employer-employee relationship existed, rather than that of an independent contractor as defined by Regulation 106 of Section 402.204, Treasury Regulations. This Court accepts and follows the Treasury Department's rulings construing the Internal Revenue Laws of the U. S. rather than that of a State court of last resort, construing a State Statute, of a similar nature. The decision of this issue in the State Supreme Court or a court of last resort of any of the States from which decisions have been cited, cannot be taken as precedents in this case. In referring to decisions of courts of last resort of the various States, the Supreme Court of the United States said: "Congress no more intended to import this mass of technicality as a controlling 'standard' for uniform national application than to refer decision of the question outright to the local law." National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 858, 88 L.Ed. 1170.

In the Hearst Publications case, supra, the Supreme Court of the United States was construing the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., but, in so doing, they announced certain principles that have since been followed in the construction by the Courts of the Social Security Act, and these principles have become the law applicable to the facts in this case.

This court in Emard v. Squire, D.C., 58 F.Supp. 281, gave application to well recognized common law distinctions between the employer-employee and the independent contractor relationship. This was upon the erroneous assumption that the Hearst case, supra, which had been decided some eight months previously, applied only to the National Labor Relations Act. Since this Court wrote that opinion, the Circuit Court of this Circuit, in United States v. Aberdeen Aerie of Eagles, 9 Cir., 148 F.2d 655, 658, adopted the principle and reasoning of the Hearst case as being applicable to

---

the Social Security Act, in the following language:

"The case against the Hearst Publications, supra, serves to shatter the illusion fostered in the past that there is some simple, uniform and easily applicable test which the courts have used, in dealing with problems involving the employer-employee relationship, to determine whether persons doing work for others are employees or independent contractors. * * *."

"The applicability of the statute is to be judged rather from the purposes that Congress had in mind than from common law rules worked out for determining tort liability * * *".

In the Eagles case, supra, the Court further approves the pronouncement found in United States v. Vogue, 4 Cir., 145 F.2d 609, 611, wherein it was said: "The purpose of that act (Social Security) was to provide old age, unemployment and disability insurance for workers in industry. * * * Common law rules as to distinctions between servants and independent contractors throw but little light on the question involved. The Social Security Act, like the Fair Labor Standards Act, * * * and the National Labor Relations Act * * *, was enacted pursuant to a public policy unknown to the common law; * * *."

Thus, we have a statement of law controlling in this Court in reference to determining distinctions between servant and independent contractor. All Federal cases involving the employer-employee relationship, whether they be constructions of the Social Security Act, the National Labor Relations Act, or the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., become precedents in the instant case.

The most recent expression of the Federal Courts on this question of employer-employee relationship in matters of this nature, construing the Social Security Act, is found in Grace v. Magruder, 80 U.S. App.D.C. 53, 148 F.2d 679, 680, Court of Appeals, District of Columbia, in which the following statement appears:

"That the common law cases which define employees and independent contractors are not controlling * * *.

"The Social Security Act, like the Fair Labor Standards Act * * * and the National Labor Relations Act * * * were enacted pursuant to public policy unknown to the common law * * *."

The facts as found, when subjected to the interpretations of the Social Security Act by the Commissioner of Internal Revenue and the Federal Courts, support the determination made at the time the taxes herein were levied by the Collector of Internal Revenue, and the judgment, therefore, will be one dismissing the plaintiff's action. Appropriate Findings of Fact and Conclusions of Law and Decree may be submitted upon notice.