## UNITED STATES v. VOGUE, Inc.

### No. 5264.

Circuit Court of Appeals, Fourth Circuit.

Nov. 13, 1944.

610.

Robert R. Reynolds, Jr., Sp. ·Asst. to
Atty. Gen. (Samuel O. Clark, Jr., Asst.
Atty. Gen., Sewall Key, Sp. Asst. to Atty.
Gen., Frank S. Tavenner, Jr., U. S. ·Atty.,
of Woodstock, Va., and R. Roy Rush, Asst.
U. S. Atty., of Roanoke, Va., on the brief),
for appellant.

John L. Abbot, of Lynchburg, Va., for
appellee.

PARKER, Circuit Judge.

This is an appeal by the United States
in a suit instituted under the Tucker Act,
28 U.S.C.A. § 41(20), to recover insurance
contributions and unemployment taxes in
the amount of $2,116.64, paid for the years
1936 to 1941 inclusive. Plaintiff is The
Vogue, Incorporated, a Viriginia corpora-
tion which at that time operated in Lynch-
burg a retail store for the sale of women's
clothing. The question in the case is
whether seamstresses who worked in the
alterations department of plaintiff's store
were employees of plaintiff within the
meaning of the Social .Security Act, as
amended. The court below, answering this
question in the negative, gave judgment
in favor of the plaintiff and the United
States has appealed.

The facts are not disputed and are fully
set forth in the findings and opinion of·
the court below. They need not be re-
peated at· length here. Briefly stated, they
are as follows: A Mrs. Fulton and after
her a Mrs. Woodfin occupied a room in
plaintiff's store and made alterations in
garments sold by plaintiff. They made
other alterations also when they had the
opportunity, but the bulk of the work done
by them was in connection with sales made
by plaintiff. For this work a charge was
made at rates which they fixed in accord-.
ance with custom, and this was collected
by plaintiff and a fixed portion thereof·
was paid to them weekly, whether col-.
lected by plaintiff or not, 75% of such
charge being paid to Mrs. Fulton when,
she occupied the position and 70%· to Mrs..
Woodfin. Both women made the alter-
ations in accordance with their own judg-
ment without supervision or direction, but
they were subject to call by plaintiff and
handled such matters as were turned over·
to them. Mrs. Woodfin worked a while
for plaintiff at weekly wages, and during
this time handled the alterations in the·
same way as they were handled when paid,
for on the piece work basis. Mrs. Fulton
used her own sewing machine, but in the
case of Mrs. Woodfin sewing machines
were furnished by plaintiff. Both fur-·
nished their own shears, needles and thread
when working on the piece work basis.
An assistant was employed from time to
time; and this assistant was paid by Mrs.
Fulton and Mrs. Woodfin when proceed-
ing under the piece work basis, but by
plaintiff when Mrs. Woodfin was being
paid a weekly wage. Both women not
only worked in plaintiff's store building,
but gained access to their working quar-
ters through the store, to which they were
not given a key. It appears that they had
charge of the room in which they worked
and had the key to it. Except in dull
seasons, they observed the same working
hours as other persons working in the
store. While they had the right to work
for persons other than those who pur-
chased goods from plaintiff, the plaintiff
collected for such services and paid them
a percentage of collections as in other
cases. An alterations department such
as the women conducted in the store was
essential to the carrying on of a first class
retail store of the sort that plaintiff was
operating.

On the above facts, we think it perfectly clear that Mrs. Fulton and Mrs. Woodfin were not independent contractors, but employees within any fair meaning of that term and certainly within the meaning of the Social Security Act. If a valuable garment had been ruined by their negligence, plaintiff would hardly have attempted to throw the loss on the shoulders of a customer by a plea that they were independent contractors; and certainly no court would have given serious consideration to such a plea. As little attention would have been paid to the plea if one of their assistants had been injured by a defective tool or machine. They were engaged in work which was an important part of the work of plaintiff's store; they occupied premises over which plaintiff exercised control; they were subject to call by plaintiff; they did work which plaintiff gave them to do; they were paid for their work by plaintiff; and when they worked for a weekly wage and were unquestionably subject to plaintiff's orders they handled the work in precisely the same way as when working on the piece work basis.

The law of independent contractors has an important place in the law, but surely it was never intended to apply to humble employees of this sort, so completely subject to the domination and control of the employer. To allow the employer to escape the consequences or to deny the employee the benefits of the employer-employee relationship because of agreement that payment be made on the piece work basis or because the employee exercises the judgment with respect to the work that is expected of any skilled worker, is to lose the substance of the relationship in attempting to apply certain rule of thumb distinctions in the law of independent contractors. The fact that one having an independent calling, such as a cook, gardener or chauffeur, exercises a judgment as to the work done free of detailed direction by his employer does not make him an independent contractor (27 Am.Jur. 498; note Ann.Cas.1918C, p. 653 et seq.); and we think there can be no question here but that there was such general right of control by plaintiff over these women, who were making repairs in the store on goods sold to its customers, as to establish beyond question the employer-employee relationship with the incidents thereto pertaining. Cf. Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 116 A.L.R.

449; H. E. Wolfe Const. Co. v. Fersner, 4 Cir., 58 F.2d 27.

Whatever conclusion might be drawn, however, as to whether Mrs. Fulton and Mrs. Woodfin were or were not independent contractors under the rules of the common law as applied in the several states, we think there can be no question that they and their assistants should be held to be employees of plaintiff within the meaning of the Social Security Act, as amended. 26 U.S.C.A. Int.Rev.Code, §§ 1400, 1410. The purpose of that act was to provide old age, unemployment and disability insurance for workers in industry; and certainly a seamstress who works in a store making alterations on garments sold and is paid by the storekeeper for work done falls clearly within the class it was intended to protect; and we think it equally clear that she falls within the language of Treasury Regulation 90, promulgated under the Act, the pertinent portions of which are as follows:

"Art. 205. Employed individuals.—An individual is in the employ of another within the meaning of the Act if he performs services in an employment as defined in section 907(c). However, the relationship between the individual who performs such services and the person for whom such services are rendered must, as to those services, be the legal relationship of employer and employee. The Act makes no distinction between classes or grades of employees. * * * The words 'employ', 'employer', and 'employee', as used in this article, are to be taken in their ordinary meaning. * * * Whether the relationship of employer and employee exists, will in doubtful cases be determined upon an examination of the particular facts of each case. Generally the relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. *In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has a right to do so.* The right to discharge is also an important factor indicating that the person possessing

that right is an employer. Other factors characteristic of an employer *are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services.* In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result he is an independent contractor, not an employee. If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus if two individuals in fact stand in the relation of employer and employee to each other, it is of no consequence that the employee is designated as a partner, coadventurer, agent, or independent contractor. The measurement, method, or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists." (Italics supplied).

■ Common law rules as to distinctions between servants and independent contractors throw but little light on the question involved. The Social Security Act, like the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., was enacted pursuant to a public policy unknown to the common law; and its applicability is to be judged rather from the purposes that Congress had in mind than from common law rules worked out for determining tort liability. "Red caps" have been held employees of railroads within the Fair Labor Standards Act. Williams v. Jacksonville Terminal Co., 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914; Southern Ry. Co. v. Black, 4 Cir., 127 F.2d 280. Needleworkers engaged in processing materials in their own homes on a piece work basis have been held within the act. Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60. And newsboys have been held employees within the meaning of the National Labor Relations Act. National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851. If the status of employees is to be accorded to "red caps" and newsboys within the meaning of these kindred statutes, certainly the status should not be denied the women workers here who fall so clearly within the statutory purpose.

The Social Security Act like the National Labor Relations Act does not define employees, and consequently what was said by the Supreme Court in National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 855, in holding that newsboys were employees within the meaning of the act is pertinent here. The court said:

"The principal question is whether the newsboys are 'employees.' Because Congress did not explicitly define the term, respondents say its meaning must be determined by reference to common-law standards. In their view 'common-law standards' are those the courts have applied in distinguishing between 'employees' and 'independent contractors' when working out various problems unrelated to the Wagner Act's purposes and provisions.

"The argument assumes that there is some simple, uniform and easily applicable test which the courts have used, in dealing with such problems, to determine whether persons doing work for others fall in one class or the other. Unfortunately this is not true. Only by a long and tortuous history was the simple formulation worked out which has been stated most frequently as 'the test' for deciding whether one who hires another is responsible in tort for his wrongdoing. But this formula has been by no means exclusively controlling in the solution of other problems. And its simplicity has been illusory because it is more largely simplicity of formulation than of application. Few problems in the law have given greater variety of application and conflict in results than the cases arising in the borderland between what is clearly an employer-employee relationship and what is clearly one of independent entrepreneurial dealing. This is true within the limited field of determining vicarious liability in tort. It becomes more so when the field is expanded to include all of the possible applications of the distinction.

\*   \*   \*   \*   \*

"It will not do, for deciding this question as one of uniform national application, to import wholesale the traditional common law conceptions or some distilled essence of their local variations as exclusively controlling limitations upon the scope of the statute's [broad terms and purposes].

\*   \*   \*   \*   \*

" 'Technical concepts pertinent to an employer's legal responsibility to third persons for the acts of his servants' have been rejected in various applications of this Act both here \*  \*  \* and in other federal

courts * * *. There is no good reason for invoking them to restrict the scope of the term 'employee' sought to be done in this case. That term, like other provisions, must be understood with reference to the purpose of the Act and the facts involved in the economic relationship. 'Where all the conditions of the relation require protection, protection ought to be given.' "

We have not overlooked the decision of the Sixth Circuit in Glenn v. Beard, 6 Cir., 141 F.2d 376; but that decision was rendered prior to the decision of the Supreme Court in the Hearst Publications case, supra, and must be discounted accordingly. Without expressing any opinion as to whether the decision in Glenn v. Beard is correct or not, it is sufficient to say that the question is very different from that which we have here and that we are more impressed with the decision of the Sixth Circuit in Walling v. American Needlecrafts, supra, dealing with the Fair Labor Standards Act, wherein that court said [139 F.2d 63]:

"It will avail us little to consider whether the master-servant relationship existed between the appellee and its home-workers under the common law, and we may assume that the well-considered opinion of the District Judge was, in that respect, sound, even though there are cases, both state and federal, which hold that an employer-employee status may exist when there is no continuous supervision over the work if there is such supervision as the nature of the work requires. Our decision in Western Express Company v. Smeltzer, 6 Cir., 88 F.2d 94, 112 A.L.R. 74, is sufficiently illustrative of such line of authority. We are dealing, however, with a specific statute which, like the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., is of a class of regulatory statutes designed to implement a public social, or economic policy through remedies not only unknown to common law but often in derogation of it. National Labor Relations Board v. Colten, 6 Cir., 105 F.2d 179; Agwilines, Inc. v. National Labor Relations Board, 5 Cir., 87 F.2d 146, 150, 151; Consumers Power Co. v. National Labor Relations Board, 6 Cir., 113 F.2d 38. If the Act presently considered, expressly or by necessary implication, brings within the scope of its remedial and regulatory provisions, workers in the status here involved, we are not concerned with the question whether a master-servant relationship exists under otherwise applicable rules of the common law."

The case of Magruder v. Yellow Cab Co., 4 Cir., 141 F.2d 324 is clearly distinguishable upon the facts.

For the reasons stated, the judgment appealed from will be reversed.

Reversed.