**WALLING v. LANDAU et al.**

District Court, S. D. New York.

June 29, 1945.

916

Douglas B. Maggs, Solicitor, and Archibald Cox, Associate Solicitor, both of Washington, D. C., and Irving Rozen, Regional Attorney, James V. Altieri, Senior Attorney, and Samuel Gorin, Associate Attorney, all of New York City, United States Department of Labor, for plaintiff.

Davies, Auerbach, Cornell & Hardy, of New York City (John K. Carroll and Christopher W. Hoey, both of New York City, of counsel), for defendants.

BRIGHT, District Judge.

Plaintiff asks a preliminary injunction restraining defendants, (1) from employing or suffering any of their employees to work in the embroideries industry in their home without having obtained the special homework certificates in accordance with the wage order; (2) from paying any of such homeworkers less than 40¢ per hour, and (3) from failing to keep and preserve records of their homeworkers of the wages, hours and other conditions as prescribed by plaintiff's regulations, Title 29, Chapter V, Code of Federal Regulations Part 516.

The action is brought for the injunctive relief mentioned. The complaint alleges that on August 21, 1943, pursuant to authority conferred by sections 5 and 8 of the Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S. C.A. § 201 et seq., the Administrator issued an order fixing a minimum wage rate of 40¢ an hour for the embroideries industry, prohibiting the doing of work in such industry in or about a home, except by persons as have obtained special homework certificates issued by the Wage and Hour Division, with certain exceptions not material here. The complaint further alleges that the defendants are engaged in the production, sale and distribution of embroideries, employ about sixty employees, including homeworkers, in the City of New York, in the production of embroideries and in processes or occupations necessary to such production, the goods produced by such employees and homeworkers are produced for and shipped in interstate commerce; that

notwithstanding the wage order promulgated, the defendants employ homeworkers without having obtained special homework certificates, and pay certain of them less than 40¢ an hour. It is further alleged that on October 21, 1938, as amended September 15, 1941, the Administrator promulgated regulations prescribing the records of persons employed, including homeworkers, and of wages and hours and other conditions and practices of employment, to be made and preserved, which regulations the defendants have repeatedly violated and are violating.

The following facts appear to be undisputed. Plaintiff is the duly appointed Administrator of the Wage and Hour Division of the United States Department of Labor, and has authority to issue wage orders fixing minimum wage rates and containing such terms and conditions as he finds necessary to carry out the purpose of such order, to prevent the circumvention or evasion thereof, and to safe-guard minimum wage rates established thereunder, and has also power to prescribe by regulation the records of persons employed, and of the wages, hours and other conditions and practices of employment maintained by the employer. These could not very well be in dispute; it is so provided by section 8(f) of the Act, and is settled by the decision in the case of Gemsco, Inc., v. Walling, 2 Cir., 144 F.2d 608, 155 A.L.R. 761, affirmed 324 U.S. 244, 65 S.Ct. 605.

Defendants are engaged in business in the embroideries industry and embroider materials, which are sold in interstate commerce. They employ homeworkers who are engaged in the embroidery of articles sold in that business, and who are paid on a piecework basis.

Effective September 15, 1941, the Administrator promulgated regulations with reference to the keeping of wage and hour records, which, as applied to homeworkers, required their employer to maintain and preserve pay roll or other records, which should contain, among other things, the name and address of each worker, the date and hour when and amount of work given to each worker, the date and hour when and amount returned, the kind of articles worked on, the piece rates paid an hour worked on each lot and wages paid. In addition to that, a separate handbook shall be kept for each industrial homeworker employed in a home and outside a plant, which handbook must remain in the pos-

session of the homeworker until such time as the Wage and Hour Division may request it. Defendants did not keep such records, or furnish to or keep for such homeworkers such a book.

Effective January 27, 1941, plaintiff issued a wage order, which, in part, fixes a minimum wage rate of not less than 37½¢ an hour to be paid to each employee in the embroideries industry. Effective September 20, 1943, a wage order was made, fixing the minimum wage at 40¢ an hour, and providing that no work shall be done about a home except by persons as have obtained special homework certificates issued pursuant to applicable regulations of the Wage and Hour Division. It is not disputed that defendants have never complied with the provisions of this order, insofar as homework certificates are concerned. None of their employees have or ever had any.

It further appears without dispute, that upon an inspection commencing June 19, 1941, by an inspector of the Wage and Hour Division, it was found that the defendants kept no record of hours of their homeworkers, nor were homework handbooks issued or kept, and that wages under the minimum were paid to defendants' employees. Defendants acknowledged these violations, and agreed to pay restitution to 105 of their employees, in the sum of $2,621.08, and promised strict future compliance with the Act.

A second inspection of the defendants' business was commenced on September 30, 1942, by a similar inspector, during which it was found that all of the defendants' employees, ranging from 31 to 75, were homeworkers, that less than minimum wages were being paid, that although defendants had requested 100 handbooks after the first inspection, none had ever been distributed because, as one of the defendants stated, "It was too much trouble". It was also found that the records kept by defendants did not show the date and hour when the work was given out, or returned, or the hours worked on each lot issued. It was then determined that there was due in back wages $3,239.34 to 277 homeworkers, of which defendants agreed to be responsible for $500 and the corporation to whom they furnished the homework agreed to the balance.

A third inspection of the defendants workers was commenced on December 27, 1944. An examination of the defendants' records from October 1, 1942 to December 11, 1944, revealed the fact that the records did not show the number of hours worked by any of the defendants' employees. The inspector was informed by some of the homeworkers interviewed that they received less than the minimum wages, none of them possessed homework books, and none of them had special homework certificates.

A fourth inspection on May 23, 1945, showed that the keeping of records had not changed since the last inspection, and that no records of hours of homeworkers were being kept. A homeworker being interviewed at that time had no homework handbook, and no special homework certificate.

Other inspections made on May 23, 24 and 25, 1945, showed that defendants' homeworkers still had no homework handbooks or special homework certificates.

In fact, there is no claim that defendants either kept or furnished to their homeworkers the handbook, nor did they obtain for any of them special homework certificates.

The only dispute arises from the fact that the proof of what the defendants' homeworkers were being paid consisted solely in hearsay statements made by the homeworkers to the Wage and Hour inspectors, and a statement of one of defendants that to the best of his knowledge, all of his employees presently engaged in performing any embroidery work in their homes are receiving a minimum of at least 40¢ an hour for the work which they perform. He admits that he has not submitted applications for special homework certificates, but is preparing to do so, and that he is now putting into effect a method whereby his pay records will reflect the total hours worked by each of his employees for all weeks during which they are engaged on his work. At the present time (June 18, 1945), there are in his employ approximately 35 to 40 employees. Defendants also submit nine affidavits of homeworkers who estimate or believe that their work for the defendants brings them in more than the minimum rate of 40¢ an hour for the work they do for the defendants.

There is clearly proven, and, in fact, conceded, violation of the wage orders of the plaintiff with respect to the keeping of records, of handbooks, and the failure to obtain special homework certificates. Plaintiff has not proven by competent and prop-

er evidence any violation with reference to the payment of minimum wages.

Defendants contend, therefore, in view of the failure to show a violation of the statute or the wage order as to the payment of less than minimum wages, there is no power in the plaintiff to enforce by injunction any of the other provisions of the wage order. The argument is that under section 17 of the Act, this court has power only "to restrain violations of section 15"; and section 15(a) makes it unlawful for any person, (1) to ship or sell in interstate commerce any goods in the production of which any employee was employed in violation of "section 6, or section 7, or in violation of any regulation or order of the Administrator issued under section 14"; (2) to violate any of the provisions of sections 6 or 7, or any provision of an order issued under section 14; (3) or to violate any of the provisions of section 11(c) or section 12. Since there is no reference in section 15 to section 8, under which the Administrator issued his wage orders in the instant case, and there being no competent proof of failure to pay minimum wages, the terms of section 15 cannot be extended to cover the conceded violations of the wage orders in respect to records, handbooks and special homeworkers certificates.

Congress found (section 2) that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well being of workers, caused commerce to be used to spread such conditions among the workers in the several states, to burden the free flow of goods in commerce, to lead to labor disputes, burdening and obstructing commerce, and interfering with the orderly and fair marketing of goods in commerce. With a view to carrying out the policy of the Act, the Administrator was authorized, by order, to approve and "carry into effect" the recommendations made by the Industry Committee as to minimum wages, and such orders shall also contain such terms and conditions as the Administrator finds necessary to carry out the purposes of such orders, to prevent the circumvention or evasion thereof, and to safeguard minimum wage rates established thereunder, section 8(a), (d) and (f). The Administrator, by section 11(a), is authorized to enter and inspect places and records, question employees, and investigate such facts, conditions, practices or matters "as he may deem necessary or appropriate to determine whether any person has violated any provision of the Act, or which may aid in the enforcement of the provisions of this Act." "Except as provided in section 12 (which has no relevancy here), the Administrator shall bring all actions under section 17 to restrain violations of this Act." Under subdivision (c) of section 11, every employer is required to keep and preserve records of persons employed by him as may be prescribed by the Administrator as "necessary or appropriate for the enforcement of the provisions of this Act or the regulations or orders thereunder."

I cannot believe that it was the intention of Congress to limit the power of the Administrator to enforce his orders to the respect specifically mentioned in section 15. The Act in other sections is implicit with the idea of enforcement in other respects, and it is not to be presumed, and certainly I shall not do so, that the other acts and orders of the Administrator were to be an idle ceremony, or that Congress had any such intention. A somewhat similar argument was made in the Gemsco case, and although the question was not directly decided, what was said is significant. That case definitely held that the Administrator had the power to make an order prohibiting homework. Mr. Justice Rutledge, referring to the contention made in that case that the Administrator has no enforcement functions under the Act, or, in any event, that the Act provides no means for enforcing the terms and conditions, including restriction or prohibition of homework, which he may include in his order, wrote at pages 266 and 267 of 324 U.S., at page 617 of 65 S.Ct.:

"The Administrator's function under Section 8(f), though primarily preventive, obviously is related to enforcement. And further, he is expressly granted powers bearing directly to that end. Apart from his investigative authority under Section 11 * * *, he has power also by express provision of that section to bring suits under Section 17 * * * to restrain violations of wage orders.

"We need not determine whether this includes authority to sue independently to restrain violations of 'terms and conditions' properly included in such an order or to ask for this relief as incidental to enjoining violations of the rate specified. Cf.

Hecht Co. v. Bowles, 321 U.S. 321, 330, 64 S.Ct. 587, 592 [88 L.Ed. 754]; Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 461, 60 S.Ct. 618, 627, 84 L.Ed. 852; United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 801, 83 L.Ed. 1211; Warner & Co. v. Lilly & Co., 265 U.S. 526, 532, 44 S.Ct. 615, 618, 68 L.Ed. 1161. But certainly the absence of such authority cannot be assumed, closely related as it would be to enforcement of the order's primary term. Congress did not include authority to prescribe 'terms and conditions' merely as a preachment. Cf. California Drive-In Restaurant Ass'n v. Clark, 22 Cal.2d 287, 140 P.2d 657, 147 A.L.R. 1028."

In view of the obvious undisputed and flagrant violations of the wage orders, the motion will be granted, and injunction will issue restraining the defendants and their officers, agents and employees in the respects specified in subdivisions 1 and 3 of the order to show cause. The order will be settled on notice.