**WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. WOLFF et al.**

No. 5631.

District Court, E. D. New York.

Sept. 24, 1945.

Irving Rozen, Regional Atty., U. S. Dept. of Labor, of New York City, for plaintiff.

Erich Cohn, of Forest Hills, N. Y., for defendants.

KENNEDY, District Judge.

This is an application for a preliminary injunction restraining the defendants against (1) suffering and permitting "employees" to produce work at home without obtaining a special homework certificate, and (2) paying any of their "employees" a minimum wage rate less than 40¢ an hour, and (3) failing to keep adequate and accurate records of their "employees," including homeworkers. The application is based upon the Fair Labor Standards Act,[1] and the wage order for the Embroideries Industry, Regulations, Part 633, quoted in the margin.[2]

The defendants Alice Wolff and Margaret Prinz are members of a partnership known as Marlice Emblem Co. The defendants Frederick Wolff and George Prinz are the active managers of the concern, which sells embroidered insignia and emblems, principally for the armed forces. Prior to the month of April, 1945, the defendants employed homeworkers, supplying them with cloth, tools and bullion, the item last named being purchased by the defendants from Tinsel-Bullion Manufacturing Co.

On February 26, 1945, the Supreme Court held in Gemsco, Inc., et al. v. Walling, 324 U.S. 244, 65 S.Ct. 605, that the Administrator of the Wage and Hour Division, U. S. Department of Labor, had the authority under the Fair Labor Standards Act to prohibit the employment of homeworkers in the Embroideries Industry (which he had done by the promulgation of Regulations, Part 633). The decision turned on the interpretation of the Congressional intent underlying the Fair Labor Standards Act.

Immediately after the rendition of this decision the defendants, on the advice of their attorney, worked out what was thought to be a method of evading the provisions of the statute. They conferred with the Tinsel-Bullion Manufacturing Co., and as a result the latter set up a branch store near the office of the defendants. The homeworkers were then advised that the defendants would no longer supply them with tools and bullion, but that these items could be procured at the branch office of the Tinsel-Bullion Manufacturing Co. In some instances they arranged that homeworkers should be given credit for the purchase of the necessary material. The legal theory behind all this was that the homeworkers, formerly employees, were now "independent contractors." The plaintiff urges that there has been no real change in the status of the homeworkers, and that even if for some purposes, such as tort liability at common-law, they might be called "independent contractors," they are, nevertheless, subject to the provisions of the Act.

There are really two questions which must be determined here. The first question is whether homeworkers such as those involved in the case at bar are subject to the provisions of the Fair Labor Standards Act. The second question is whether the court has power to enjoin violations of a regulation forbidding the use of homework-

---

[1] Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.

[2] "No work in the Embroideries Industry, as defined herein, shall be done in or about a home, apartment, tenement, or room in a residential establishment after November 15, 1943, except by such persons as have obtained special homework certificates issued pursuant to applicable regulations of the Wage and Hour Division, authorizing industrial homework by a worker who (1) (a) is unable to adjust to factory work because of age or physical or mental disability; or (b) is unable to leave home because his presence is required to care for an invalid in the home; and (2) (a) was engaged in industrial homework in the industry, as defined, prior to November 2, 1942 (except that if this requirement shall result in unusual hardship to the individual homeworker it shall not be applied); or (b) is at any time engaged in such industrial homework under the supervision of a State Vocational Rehabilitation Agency or of a Sheltered Work Shop, as defined in Sec. 525.1, Part 525, Chapter V., Title 29, Code of Federal Regulations."

Section 15: "(a) After the expiration of one hundred and twenty days from the date of enactment of this Act, it shall be unlawful for any person—* * *

"(2) to violate any of the provisions of section 6 or section 7, or any of the provisions of any regulation or order of the Administrator issued under section 14."

Section 17: "The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction * * * to restrain violations of section 15."

ers, even in the absence of a showing that defendants have been guilty of some violation clearly within the purview of some one subdivision of section 15 of the statute.[3] It will be necessary for me to defer an explanation of why I use this rather peculiar phrasing when dealing with the question of jurisdiction to issue injunctions.

■■ Are the homeworkers in the case at bar employees within the terms of the Fair Labor Standards Act? I hold that they are. The statute defines the verb "employ" in a most peculiar way.[4] It says it includes "to suffer or permit to work." Where the worker and the defendant stand in such a relationship to each other that the former, under the common-law aspects of the matter, might more easily be called an independent contractor than a servant, does that relieve the defendant of compliance with the Act? I think not, because certainly under the facts at bar, the defendants are "suffering" the so-called independent contractors to work for them.

In Walling v. American Needlecrafts, Inc., 6 Cir., 1943, 139 F.2d 60, 63, Judge Simons takes the position that the language used in the Act, taken in conjunction with its purposes, precludes the idea that it would operate only in cases where the common law relation of master and servant was established. He was dealing with a situation very much similar to that here under consideration and he wrote for the reversal of the judgment of the district court largely on the basis that the Fair Labor Standards Act is "designed to implement a public social, or economic policy through remedies not only unknown to the common law but often in derogation of it." Dealing with the definition of the word "employ," which I have already quoted, Judge Simons cites the statement of Mr. Justice Black (then a Senator) that it is "the broadest definition that has ever been included in any one Act" (81 Cong.Rec. 7657). It is true that in the same volume of the reports there is to be found a decision sustaining a judgment of the District Court which refused to hold a partnership within the scope of the Act. Walling v. Plymouth Manufacturing Corporation, 7 Cir., 1944, 139 F.2d 178. But the facts in that case were extraordinary, and the Circuit Court affirmed because the findings of the District Court that a partnership existed were based on very sub-

stantial evidence. I mention this case only because I do not want to be misunderstood in what I have said heretofore. I recognize that there may be cases where homeworkers are not subject to the provisions of the statute. But surely the Fair Labor Standards Act was designed to include workers like those in the case at bar.

I have said that in Gemsco v. Walling, 1945, 324 U.S. 244, 65 S.Ct. 605, the Supreme Court upheld the power under the Fair Labor Standards Act of the Administrator to prohibit homeworkers in the embroidery industry. It surely must have taken into consideration that such persons are not subject to the same control as ordinary employees, because of the very nature of the relationship. In National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170, the Court rejected the contention that the provisions of the National Labor Relations Act could be ignored on the theory that newsboys were "independent contractors." It was dealing with a statute [5] where the definition of "employment" was much narrower than that found in the Fair Labor Standards Act.

■ Judge Simons' analysis of the matter under discussion was followed in United States v. Vogue, Inc., 4 Cir., 1944, 145 F.2d 609, 611, 612, 613. In that case the person whose status was in dispute occupied a room in plaintiff's store and made alterations in garments sold by the plaintiff. Judge Parker says that the law of independent contractors has an important place in the law, but surely "it was never intended to apply to humble employees of this sort, so completely subject to the domination and control of the employer." I would go further and say that the "law of independent contractors," so far as the Fair Labor Standards Act is concerned, cannot nullify the will of Congress, and take away the benefits of the statute from pieceworkers in the needlework trades, even in the absence of a showing of domination and control.

From time to time judges have refused to follow the American Needlecrafts' case. But even in these cases it has been clearly recognized that, while the usual incidents of the common-law relationship of master and servant are important in cases arising under some statutes (like the taxing statutes), Judge Simons was right in his holding that

3 29 U.S.C.A. § 215.
4 29 U.S.C.A. § 203(g).

5 29 U.S.C.A. § 152.

these criteria are not to be stringently applied in cases under the Fair Labor Standards Act (e.g., Yearwood v. United States, D.C.W.D. La., 1944, 55 F.Supp. 295; Glenn v. Beard, 6 Cir., 1944, 141 F.2d 376). And the holding in the Needlecrafts' case was applied to workers in the clothespin trade, Fleming v. Demeritt Co., D.C.Vt., 1944, 56 F.Supp. 376, and to guards and watchmen compensated under a very peculiar arrangement. Walling v. Merchants Police Service, D.C.W.D. Ky., 1945, 59 F.Supp. 873.

There can be no doubt in this case, as I have already observed, that after the Gemsco decision the attorney for the defendants advised them that they could legally refuse compliance with the Act by working a sea change in their legal relationship with the homeworkers, and putting the latter on a footing of "independent contractors." The objects of the statutes being what they are, I do not think that this legal slight-of-hand can accomplish the result intended.[6]

■ Has the District Court power to enjoin these defendants against employing homeworkers? Section 17 of the Act[7] vests jurisdiction in the District Courts of the United States to restrain violations of section 15.[8] If Congress meant that the power to enjoin violations of the statute is limited to the cases set out in section 15, then the case at bar offers some difficulty.

Section 15(a)(1) denounces the transportation of goods produced by employees who are being compensated in violation of section 6 of the statute[9] or whose hours do not comply with the terms of section 7 of the statute.[10] In the case at bar the violation complained of is not that a schedule of wages or hours is violated, but rather that homeworkers are being employed at all. Section 15(2) defines as a prohibited act the violation of either section 6 or 7, or of any regulations issued under section 14, which relates to learners, apprentices, and handicapped workers.[11] Section 15(3) prohibits

discharge of or discrimination against an employee who has instituted proceedings under the statute. Section 15(4) prohibits the violation of section 12 of the statute which concerns itself with child labor.[12] Section 15(5) covers violation of the provisions of section 11(c).[13] This subsection requires the employer to keep records of wages, hours and other conditions in the manner prescribed by the Administrator's regulations.

I have analyzed at length the section dealing with prohibited acts because in this way it becomes clear that nowhere is there an express statement that the Act is violated by those who defy a prohibition contained in the Administrator's regulations, such as the prohibition against homeworkers with which we are dealing here. Manifestly, the Administrator could not prohibit a practice and then promulgate regulations concerning the wages, hours and records involved in the prohibited employment. An argument can be made that the temporary injunction asked in the case at bar does not come squarely under any single provision of section 15 of the statute, and hence the District Court is without jurisdiction to issue it. This produces the absurd result that Congress intended the Administrator to have the power to prohibit homework in the needlework trades, Gemsco v. Walling, supra, but withheld from the courts the power to enjoin against violations of this prohibition. I cannot accept this result and I reject the reasoning which underlies it.

I am fortified in this conclusion by two recent decisions in the Southern District of New York.[14]

■ The only question remaining is whether a temporary injunction should issue in this case. It is again important to consider how the case arose. Immediately after learning of the Gemsco decision, the defendants sent for their attorney and obviously sought advice as to how the provisions of the Fair Labor Standards Act

---

[6] Curiously enough the main contention of the defendants in their brief is that if the defendants can legally refuse compliance with the Act, then the sanctity of the home will be preserved, and juvenile delinquency reduced.

[7] 29 U.S.C.A. § 217.

[8] 29 U.S.C.A. § 215.

[9] 29 U.S.C.A. § 206.

[10] 29 U.S.C.A. § 207.

[11] 29 U.S.C.A. § 214.

[12] 29 U.S.C.A. § 212.

[13] 29 U.S.C.A. § 211.

[14] In Walling v. Landau, D.C., 61 F. Supp. 915, Judge Bright held that he could enjoin the employment of homeworkers even though no actual minimum wage violations were demonstrated; in Walling v. Cimi Embroidery Co., Inc., 63 F.Supp. 601, Judge Rifkind held that this practice could be enjoined even though it was conceded that no actual minimum wage violations were in the case.

could be evaded. A legal patent nostrum, which has heretofore been described, was then concocted, and has been in use ever since, even during the time between the filing of the suit and filing of this decision. In answer to the suggestion that they were violating the Act the defendants argued that they were preserving the sanctity of the home. I cannot think of a case where the issuance of a temporary injunction is more necessary if the intention of Congress is to be carried out. As I understand it, under statutes like the one here involved, the government is under no necessity to show that irreparable harm will result from the denial of an injunction. Even so, I am inclined to think irreparable harm will result if these defendants continue to employ homeworkers in violation of the lawful order of the Administrator.

The motion is granted; settle order on notice. I have filed findings of fact and conclusions of law.