**WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. TWYEFFORT, Inc.**

District Court, S. D. New York.

March 12, 1946.

Douglas B. Maggs, Archibald Cox, William S. Tyson, and Jeter S. Ray, all of Washington, D. C., and Irving Rozen and Robert A. Levitt, both of New York City, for plaintiff.

Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City (by William H. Timbers, Rufus D. McDonald, and Cleveland C. Cory, all of New York City), for defendant.

BONDY, District Judge.

This action was brought to enjoin the violation of the provisions of Sections 15(a)(1), 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938, 29 U.S. C.A. § 201 et seq. The issue to be determined is solely whether certain tailors who work for this defendant off its premises are independent contractors, or are employees of defendant within the meaning of the Act, and therefore entitled to its benefits.

The facts were not disputed at the trial.

The defendant, a Delaware corporation, has its principal place of business in New York City. It was organized in December, 1941, to continue the business which had been conducted from 1916 to December, 1941, by a New York corporation of the same name. The president of the New York corporation became and now is the president and sole stockholder of the defendant Delaware corporation. The employees of the dissolved New York corporation continued to work for the defendant. It is engaged in the business of custom tailoring, that is, making men's and women's clothes to individual order. Approximately 65 to 75 per cent. of its output is shipped to points outside the State of New York. Its premises in New York City comprise a showroom, a designing and cutting department, a receiving room and a bushel or alteration room containing sewing and pressing equipment. Of the eight employees at present working on the premises, all do clerical work, except a designer, a cutter and three bushelmen or men who

make alterations. The premises can not accommodate more than an additional tailor and shipping clerk.

After the employees on the premises cut material in accordance with patterns made there for each customer, the material together with linings, thread, buttons and other trimmings is sent to tailors working off the premises, to be sewed according to specific chalk markings on the material and specific instructions contained on an accompanying tag, these being sufficiently detailed to direct the tailors exactly how to sew and complete the garments and obviating any need of further control, supervision or instructions or the exercise of judgment on their part.

One licensed homeworker and approximately 16 other outside tailors working on premises rented or built by them do the sewing. Another licensed homeworker does some of the repair and alteration work for the defendant. Most of the outside tailors have worked for defendant and its predecessor for long periods, some over thirty years. All of the outside tailors who sewed for defendant's predecessor worked in their homes until 1936 when industrial homework in the trade was prohibited. Thereupon defendant's predecessor ordered its outside tailors to obtain work places apart from their homes. Two of these tailors, who still sew for the defendant, complied by building shops in the yards of their homes. Once a month defendant, in accordance with its promise to do so, pays the outside tailors a stipulated sum to cover rent and possibly other expenses incurred in the maintenance of their outside shops.

Some of the tailors, however, themselves pay small sums to errand boys, cleaners and helpers without reimbursement. Several of the outside tailors at times make alterations on garments for defendant, of exactly the same kind as are made by the inside bushelmen, and are compensated therefor at a fixed hourly rate. Sometimes the tailors come for work and at other times defendant sends it to them. There is not any express contract between the tailors and defendant. The defendant is not required to give work to the tailors, nor are the tailors required to work for the defendant.

The outside tailors use, maintain and replace their own sewing machines, needles, irons and other similar equipment, just as was formerly done by such of them as did homework. Generally the outside tailors work for defendant exclusively, but in the past a few also worked for others. It is stated that one tailor at present also works for at least four others and employs about fourteen people in his shop. This appears to be an exceptional case.

Upon the completion and return of each part of a garment sewed by him, the outside tailor is paid at piece rates which have been established by the defendant. The payrolls of the outside as well as the inside tailors and other employees are made up every Monday. Before last year the defendant frequently gave the outside tailors Christmas presents consisting of money.

The outside tailors are at liberty to work when it pleases them. They take vacations, but generally at a time when business is slack and at the convenience of the defendant. Several of the outside tailors testified that they worked 65 and more usually 75 hours a week without receiving any overtime compensation and that they earned at times not more than $800, $1200 and $2500 a year.

Defendant pays Social Security and Unemployment Insurance taxes on the earnings of the licensed homeworker who does exactly the same kind of work as the tailors who work in outside shops and who, like them, owns his own equipment and who formerly worked for defendant and its predecessor in an outside shop, for the rent of which he was reimbursed. He is compensated at piece rates for piece work done by him at home just as he was in the shop. There is no difference in the relationship between defendant and this homeworker now and when he worked in the shop other than that he no longer receives from defendant any reimbursement for rent or expenses.

The issue whether an employer-employee relationship within the meaning of the Act exists between the defendant and the tailors sewing for it in outside shops must be determined entirely by reference to the terms, history and purposes of the legislation. These leave no doubt that

common law standards unrelated to the objectives of the Act are irrelevant in determining the distinction between an employee and independent contractor. Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60; Fleming v. Demeritt Co., D.C., 56 F.Supp. 376; Walling v. Wolff, D.C., 63 F.Supp. 605; Walling v. Merchants Police Service, Inc., D.C., 59 F.Supp. 873. See National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; United States v. Vogue, Inc., 4 Cir., 145 F.2d 609.

The cases cited by the defendant, not involving the Fair Labor Standards Act, do not determine that the relationship of employer and employee under the Act did not exist between the defendant and the outside tailors. It may also be noted that in cases involving the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the Social Security Act, 42 U.S.C.A. § 301 et seq., neither of which contains a definition of employment as comprehensive as that in the Fair Labor Standards Act, workers who, under common law standards or other statutes, might have been considered contractors, were held to be employees. National Labor Relations Board v. Hearst Publications, supra; United States v. Vogue, Inc., supra.

Sections 3(e) and (g) of the Act, 29 U.S.C.A. § 203(e) and (g) provide: "'Employee' includes any individual employed by an employer." "'Employ' includes to suffer or permit to work." The inclusion of employees under these definitions is in no way made to depend on the place of work or ownership of equipment and, consequently, in the opinion of the court, the relationship of employer and employee within the meaning of the Act can not be affected by the mere fact that a tailor, who undoubtedly would be considered an employee if he worked inside a custom tailor's shop, works for a custom tailor in an outside shop. It was clearly the legislative intent to include "off-premise" employees, whether homeworkers or not.

In the American Needlecrafts case, supra, in which it was decided that certain home needleworkers were included in the statutory definition of "employee," it was stated at page 64 of 139 F.2d that "The

inference is strengthened by the fact that when the Black-Connery Bill was first considered it contained a provision in § 6(a) giving the Board power to define, by regulation or order, the determination of the number of employees employed by any employer through the use of agents, independent contractors, subsidiary or controlled companies, or home or off-premise employees," and that "the purpose of original § 6(a) was sufficiently served by the expanded definition of the word 'employ' now incorporated as sub-section (g) of the Act,—a definition to which Senator (now Mr. Justice) Black referred as 'the broadest definition that has ever been included in any one Act.' (81 Cong.Rec. 7657.)"

■ If the outside tailors herein involved were *homeworkers*, they *would* be subject to the provisions of the Act, regardless of the fact that they supply their equipment at their own expense, that they use helpers in their work, that some work for competitors of the defendant, that they may refuse to accept work, that they do not work under constant supervision or on a time schedule and that they are piece workers paid at piece rates. Walling v. American Needlecrafts, supra; Fleming v. Demeritt Co., supra.

■ Most of the outside tailors now working for the defendant worked for defendant's predecessor for many years as homeworkers, using their own equipment and they and not their employer paying the rent for their homes. Then, as now, cloth cut to pattern, all thread and trimmings were supplied by their employer. Their sewing was a mere incident in completing the garments. If they were now sewing at home, these tailors would be employees of defendant under the Act. No distinction in principle can be made solely because a state prohibition prevents them from working at home and because they sew in outside shops, especially in view of the fact that at least some of the expenses of maintenance, including rent, are defrayed by the defendant.

It can not be held, in view of the language of the Act and its legislative history, that it was the intention of Congress to deny to outside tailors of this

defendant, who could not be accommodated on its premises, the protection which it gives to tailors doing the same work incidental to the completion of garments in the shop rented by their employer. Any other conclusion would enable an employer to thwart the purpose of the Act by the mere device of directing an employee to work in an outside place.

The plaintiff is entitled to a decree in accordance with his prayer.